ACCEPTED
01-15-00206-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/17/2015 7:01:50 AM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00206-CR**

**IN THE FIRST COURT OF APPEALS**

**IN HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/17/2015 7:01:50 AM
CHRISTOPHER A. PRINE
Clerk

**No. 17166**

**IN THE 253rd DISTRICT COURT OF**

**CHAMBERS COUNTY, TEXAS**

| | | |
|---|---|---|
| **CODY CRYMES** | § | Appellant |
| **v.** | § | |
| **STATE OF TEXAS** | § | State |

**STATE'S BRIEF IN RESPONSE**

Oral argument is requested if requested by Appellant.

*See* TEX. R. APP. P. 39.7

**CHERYL SWOPE LIECK**
District Attorney
Chambers County, Texas

**Kathy Esquivel**
State Bar No. 24034432
Assistant District Attorney
P.O. Box 1409
Anahuac, Texas 77514
PH: 409-267-2682
FAX : 409-267-3105

I

# IDENTITY OF THE PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), the State supplements and corrects

Appellant's list of parties to the trial court's final judgment with the names and

addresses of trial and appellate counsel for the State:

| | |
|---|---|
| **CHERYL SWOPE LIECK** | District Attorney |

TBN: 00788501
Chambers County
P.O. Box 1409
Anahuac, TX 77514
(409) 267-2682

| | |
|---|---|
| **KATHY ESQUIVEL** | Prosecuting Attorney |

TBN: 24034432                      at Bench Trial, Plea Bargain
Assistant District Attorney        and on Appeal
P.O. Box 1409
Anahuac, TX 77514
(409) 267-2682


ATTORNEYS FOR APPELLANT:

| | |
|---|---|
| **MR. JAMES KEEGAN** | At Trial, Plea Bargain |

ATTORNEY AT LAW
TBN. 11155400
4660 Beechnut St., Suite 216
Houston, Texas 77096
Phone: (713) 668-4797

| | |
|---|---|
| **MR. RICHARD K. OLIVER** | Defense Counsel Punishment |

TBN: 24048179                      and on Appeal
rickoliverlaw@gmail.com
**MR. JED SILVERMAN**
TBN: 24013511
1221 Studewood Street
Houston, Texas 77008
(713) 864-3700

# TABLE OF CONTENTS

**IDENTITY OF THE PARTIES AND COUNSEL**…………………...…………......II

**INDEX OF AUTHORITIES**………………………………….…..V

    **CASES**…………………………………………………...……………V

    **RULES**………………………………………………………..VI

    **SECONDARY MATERIALS**………………………….……………..VI

    **STATUTES**………………………………………………...……VI

**STATEMENT OF THE CASE**………………………………………8

**STATEMENT OF FACTS**…………………………………..………...9

**SUMMARY OF THE ARGUMENT**…………………………...……14

**ARGUMENT**…………………………………………...………...……15

    **STANDARD OF REVIEW**……………………………….…….15

    **POINT OF ERROR NO. 1**………………………………...……15

        **APPELLANT'S ASSERTIONS**……………….…..15

        **STATE'S REPLY**…………………………………..15

            **UNTIMELY MOTION TO WITHDRAW PLEA OF GUILTY**…………………………………………16

    **POINT OF ERROR NO. 2**……………………….…..……...…19

        **APPELLANT'S ASSERTIONS**……………………...………19

        **STATE'S REPLY**………………………………………..19

    (i)    **EVIDENCE OF GUILT WAS CLOSED BEFORE THE MOTION TO WITHDRAW WAS FILED………………………………..20**

    (ii)    **SUBSTANTIAL COMPLIANCE FOR ACCEPTANCE OF THE PLEA BARGAIN WAS SATISFIED………………………..……22**

    (iii)    **THE CLOSE OF EVIDENCE OF GUILT AND TAKEN UNDER ADVISEMENT ARE CONSISTANT WITH ARTICLE 26.13(a)(2)………………………..………29**

**PRAYER FOR RELIEF………………………………………..……37**

**CERTIFICATE OF SERVICE.…………………………………....38**

**CERTIFICATE OF COMPLIANCE……………………………….39**

# INDEX OF AUTHORITIES

**CASES:**

Blanco v. State, 18 S.W.3d 218, 219-20, Tex. Cr. App. 2000)……………….....…………19, 34

Bland v. State, 417 S.W.3d 465, 471-72 (Tex.Crim.App. 2015……………...………………….20

Chavez v. State, 183 S.W.3d 675, 679 (Tex. Crim. App. 2006)……………………………..16, 18

Crumpton v. State, 179 S.W.3d 722.fn5, (Tex. App. ─Fort Worth 2005, pet. ref'd)……………33

Garcia v. State, 91 Tex.Cr.R. 9, 237 S.W.2d 279 (1921)………………………………………15, 30

Jackson v. State, 590 S.W. 2d. 514, 515 (Tex. Crim. App. [Panel Op.] 1979)………..…15, 30, 32

Mabry v. Johnston, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)……….……………34

Matchett v. State, 941 S.W.2d 922 (Tex. Crim. App. 1996)……………………………………….18

McWherter v. State, 571 S.W.2d 312 (Tex.Cr.App.1978)……………….....……………….15

Milligan v. State, 168 Tex.Cr.R. 202, 324 S.W.2d 864 (1959)……………….....……………15, 30

Murray v. State, 302 S.W.3d, 883 (Tex. Crim. App. 2009)……………………………..20, 30, 31

Ralls v. State, 151 Tex. Crim. 146, 205 S.W. 594, 596 (1947)………….……...15, 20, 30, 31, 32

Rincones v. Windberg, 705 S.W.2d 846, 848 (Tex. App.─Austin 1986, no pet.)…………...….35

Rumage v. State, 324 S.W.2d 865 (Tex.Cr.App.1959)……………….……….……………..15, 30

Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)…………………34

Scott v. State, 860 S.W.2d 645, 646-47 (Tex. App. ─ Dallas 1993, no pet.)……….………31, 32

Stanton v. State, 159 Tex.Cr.R. 275, 262 S.W.2d 497 (1953)……………………..……..15, 30

State v. Moore, 240 S.W.3d 248 (Tex. Crim. App. 2007)……………………….………..20

Thieleman v. State, 187 S.W. 3d 455, 457-58 (Tex.Crim.App. 2005)…………………………25

Thompson v. State, 852 S.W.2d 268, 270 (Tex. App. ─Dallas 1993, no pet.)…………..……31, 32

Wilson v. State, 515 S.W.2d 274, 275 (Tex. Crim. App. 1974)………………………..……..32

<u>Wissinger v. State</u>, 702 S.W.2d 261, 262 (Tex. App. ─Houston [1st. Dist.] 1985,

pet. ref'd)……………………………………………………….…….20, 21, 22, 29, 31, 32

<u>Zapata v. State</u>, 121 SW3d 66, 67 (Tex.  App. ─ San Antonio 2003, pet. ref'd)……………33, 36

## RULES

Tex. R. App. P. 9.4…………………………………………………………………………39

Tex. R. App. P. 25.2……………………………………………………….……14, 16, 18, 20

Tex. R. App. P. 38.2(a)(1)(A)……………….……………..…..………………………………II

Tex. R. App. P. 39.7………………………………………………….…………………I

Tex. R. App. P. 43.2…………………………………………………………………..37

## SECONDARY MATERIALS

43 GEORGE E. DIX AND ROBERT O. DAWSON, 43 TEXAS PRACTICE:

CRIMINAL PRACTICE AND PROCEDURE, § 34.105 (2nd ed.2001)………………………..36

## STATUTES

Tex. Code Crim. Pro. Art. 26.13………………………………14, 16, 17, 18, 19, 20, 22, 23, 35

## STATEMENT OF THE CASE

May 23, 2013, Appellant was indicted for Sexual Assault of a Child in cause number 17166. [CR 9-10]. April 7, 2014, Appellant plead guilty, a written stipulation of his guilt was admitted without objection, the Court found Appellant was competent to stand trial, and his plea was given freely and voluntarily, the evidence of guilt was closed, the case was reset for punishment only. [RR2 3-6]. June 27, 2014, the State appeared for sentencing, but Appellant returned with New Counsel who were allow to substitute on the case. [RR3 1-3]. The case was reset for September 4, 2014 to allow New Counsel time to review the record. [RR3 7]. On the morning of September 5, 2014, Appellant file a motion to withdraw his plea and served the State with such motion. [RR4 4-7]. Due to the late filing and amount of material to review the case was reset to October 10, 2014 to allow the State and New Counsel time to meet and discuss the case. [RR4 7-8]. On October 10, 2014 both sides submitted briefs and the case was reset to December 18, 2014 for a hearing on Appellant's motion. [RR5 3-6]. December 18, 2014 the Court found Appellant did not have an absolute right to withdraw his plea of guilty and gave Appellant two options, (1) the Court would rule at that time under its discretion whether or not to allow Appellant to withdraw his plea of guilty, or (2) Appellant could agree to submit himself to a polygraph, working with the State as to what three questions they would suggest the polygrapher ask. Appellant chose the latter and the case was reset to February 27, 2015. [RR6 13-16]. On February 27, 2015 the Court sentenced Appellant as per the terms of his plea bargain with the State. [RR7 15-18]. Appellant file Notice of Appeal March 3, 2015. [CR 82].

**STATEMENT OF FACTS**

On February 7, 2014 a pretrial conference was held in chambers with Trial Counsel, the State and the Presiding Judge. [CR 152]. In that conference the State recited the terms of the plea bargain to the Judge. *Id.* It was believed that Louisiana may refuse the transfer of the case and the consensus was Appellant would have to prepare himself for the possibility of serving out his deferred adjudication in Texas. *Id.* A decision was made to accept the plea but delay the beginning of Appellant's community service so Appellant could attend the birth of his child in Louisiana. [CR 151; see below]. The Trial Court's Certification of Defendant's Right to Appeal indicating Appellant had NO right of appeal because this was a plea bargain case, or the defendant waived his right of appeal was signed by Appellant, his Trial Counsel, and the Presiding Judge and filed with the District Court on February 7, 2014, indicating the Court had accepted the plea bargain. [CR 27-69].

Further evidence that the case was accepted by the Trial Court is seen at the beginning of the guilty plea, on February 7, 2014, when the State reminded the Court, "We're not doing punishment today." And the Court confirmed, "I understand." [RR2 3]. The Court admonished Appellant, in writing, that ". . . If a plea bargain does exist, the Court must inform you in open court whether or not it will follow the agreement before any finding is made on your plea. Should the Court reject your agreement, you are entitled to withdraw your plea." [RR8 7]. Then the Court Admonished Appellant that he was charged with Sexual Assault of a Child, the range of punishment, and confirmed his waiver of his right to a trial by jury, his waiver of his right to call and confront witnesses, his waiver of his right to appeal, that he would have to register as a sex offender for the remainder of his life, and other rights. [RR2 3-6]. This was done by a combination of written and oral admonishment with the Court verifying the written

admonishments signed by Appellant. [RR2 4]. Next the Court took a break to find the written sex offender papers. [RR2 4]. The Court returned with the written sex offender admonishments and asked Appellant if he went over them with his attorney. Appellant affirmed he did and the Court admonished, "You do understand that you will be required to register as a sex offender the rest of your life? Appellant responded, "Yes, sir." [RR2 4-5].

Appellant plead guilty, the Court found he was competent to stand trial, and further that his plea was freely and voluntarily given. [RR2 6]. The State offered a document titled Stipulations, Waivers and Admonishments which was admitted without objection. [RR2 6]. In that document Appellant waived, "all rights given [him] by law, whether of form, substance, or procedure" as well as other rights. [RR8 6]. Then the Court asked the State, "Anything else on behalf of the State?" To which the State replied, "No, Your Honor." [RR2 6]. Indicating the end of the State's case. Next the Court asked Trial Counsel, "Anything else on behalf of [Appellant]?" Appellant's trial counsel explained some of the terms of the plea bargain and waived Appellant's three year defense. When Trial Counsel finished, the Court rephrased the question as, "Anything else to present?" Trial Counsel responded, "No, Your Honor." [RR2 6-7].

The Court asked the State what the terms of the plea bargain were, the State recited the terms and Trial Counsel affirmed the agreement. [RR2 7-8]. The written plea bargain was signed by the State, Appellant, and Trial Counsel and filed with the District Clerk. [RR8 7-8]. Last, the Court clarified that both parties agreed to reset the case for the purpose of the sentencing. [RR2 8].

Appellant's wife called Trial Counsel to obtain contact information for the sex offender treatment counselor four days after the guilty plea. [CR 153]. Before Appellant sought new counsel Appellant's wife completed the chaperon program as required by the plea bargain. [CR

- 10 -

267; RR3 4].

After the plea, the case was reset to June for sentencing so that Appellant could attend the birth of his child in Louisiana and have time to move his family to Texas if the deferred probation would not transfer. [RR4 3-4; RR7 5; CR 151-52].

On June 27, 2014 the State appeared for sentencing, but Appellant returned with New Counsel moving to substitute on the case. [RR3 1-3]. The Court clarified through the State and Trial Counsel that Appellant had already entered a plea and the sentencing was agreed. [RR3 5]. The New Counsel, Jed Silverman and Rick Oliver, hereinafter referred to as "Appellate Counsel or New Counsel", substituted on the case and the case was reset for September 5, 2014 to give New Counsel time to review the record. [RR3 7].

On September 5, 2014, Appellant filed a motion to withdraw his plea of guilty. [RR4 4-7]. The Court announced, "If you're entitled to withdraw your plea, of course I'll let you do whatever you're entitled to. If it's discretionary with the Court, I haven't made a decision whether I will or won't." [RR4 7]. Due to late filing of the motion and the volume of material to review in the case, the case was reset to October 10, 2014 to allow the State and Appellate Counsel time to meet and discuss the case. [RR4 7-8].

On October 10, 2014, both sides submitted briefs. [RR5 4]. The case was then reset to December 18, 2014, for a hearing to determine whether or not Appellant had a right to withdraw his plea or if it was within the discretion of the trial court. [RR5 4-6].

On December 18, 2014, after the Court read the transcript of Appellant's plea, the Court concluded, "This is - it appears to me that this was a plea agreement, and I don't think he's got a – an absolute right – to withdraw his plea." [RR6 11; RR7 15]. Appellant's new attorney argued the plea was incomplete because the trial court did not indicate whether it would accept or reject

the plea bargain, but admitted that after a case has been taken under advisement a defendant no longer has an absolute right to withdraw his plea of guilty. [RR6 12]. The Court then explained that the case was taken under advisement when, "I did by implication. I mean, it's my general – my general – I asked – I specifically asked: Do y'all want to set this for a different date for sentencing? And I'm not trying to split hairs with you. On – on  sexual offenses, there are times that I refuse to accept the pleas, and I tell them right up front when I'm not going to accept the plea." [RR6 12-13]. Afterward the Court gave Appellant two options, (1) the Court would rule at that time under its discretion whether or not the Court would allow Appellant to withdraw his plea, or (2) Appellant could agree to submit himself to a polygraph, working with the State to draft three questions they would suggest the polygrapher ask. Appellant chose the latter and the case was reset to February 27, 2015. [RR6 13-16].

On February 27, 2015, after reviewing the transcript of the plea for the second time, the Court again found it had accepted the plea agreement and explained it was the Court's practice when refusing a plea bargain on a sexual assault case to do so at the time the Court hears the terms of the plea bargain on a sexual assault so as not to waste time. [RR7 7-9]. The Court even cited to a sexual assault case in which the Court had just refused a plea bargain upon hearing the terms. [RR7 7]. Appellate Counsel again made his argument into the record. [RR7 10]. Appellate Counsel then asked the Court to amend the trial court's certification of his right to appeal and allow Appellant to appeal: the Court denied the request stating, "No. No, I'm not going to do that. You – you've got your – your contention and you can appeal it up and the Court of Appeals and maybe beyond can make a determination whether he has a right to withdraw his – his plea." [RR7 12-13]. The Trial Court's Certification of Defendant's Right to Appeal indicates, "I judge of the trial court, certify this criminal case: is a plea-bargained case and the defendant has NO

right of appeal or the defendant has waived his right of appeal." [CR 69]. The Court then proceeded with the sentencing, confirming this was a plea bargain, again asking the State the terms of the plea bargain, the State recited the terms, the Court asked Appellant if that was indeed the agreement, Appellant Counsel confirmed, subject to his previous objection, and clarification of a fee was determined. Then Appellant confirmed the State correctly recited the plea agreement. The Court announced it would follow the plea bargain, the evidence did support a finding of guilt, but differed the finding and placed Appellant on the agreed deferred adjudication. [RR7 15-17].

## SUMMARY OF THE ARGUMENT

Appellant does not have a right to appeal under rule 25.2 or article 26.13. TEX. R. APP. P. 25.2; TEX. CODE CRIM. PRO. ART. 26.13. Appellant's written motion was not filed pretrial as required by both rule 25.2 and article 26.13. The case was taken under advisement when all evidence of guilt was closed February 7, 2014, and the case was reset for the sole purpose of sentencing. Appellant filed his motion to withdraw his plea of guilty months later. The Trial Court did not give Appellant permission to appeal. Appellant waived his right to Appeal in the trial court's certification of his right to appeal.

A review of the entire record reveals substantial compliance as it applies to the court's acceptance of the plea bargain was met therefore Appellant has no claim under article 26.13(a)(2). Additionally, Appellant waived all rights given to him by law, whether of form, substance or procedure in the document titled Stipulations, Waivers & Admissions; therefore, Appellant's argument that the plea was incomplete because the court did not accept or reject the plea timely on the record is mute. Furthermore, article 26.13 only expressly permits the defendant to withdraw his plea of guilty or nolo contendere if the court rejects the agreement, the Court did not reject the agreement.

## STANDARD OF REVIEW:

A liberal practice prevails in this state concerning the withdrawal of a guilty plea, Garcia v. State, 91 Tex.Cr.R. 9, 237 S.W.2d 279 (1921); Stanton v. State, 159 Tex.Cr.R. 275, 262 S.W.2d 497 (1953), and a defendant may withdraw his guilty plea as a matter of right without assigning reason until such judgment has been pronounced or the case has been taken under advisement. Milligan v. State, 168 Tex.Cr.R. 202, 324 S.W.2d 864 (1959); Rumage v. State, 324 S.W.2d 865 (Tex.Cr.App.1959); Stanton v. State, supra; Ralls v. State, 151 Tex.Cr.R. 146, 205 S.W.2d 594 (1947). However, where the defendant decides to withdraw his guilty plea after the trial judge takes the case under advisement or pronounces judgment, the withdrawal of such plea is within the sound discretion of the trial court. McWherter v. State, 571 S.W.2d 312 (Tex.Cr.App.1978).

Jackson v. State, 590 S.W.3d 514, 515 (Tex.Crim.App. [Panel Op.] 1979).

**POINT OF ERROR NO. 1**

**APPELLANT'S ASSERTIONS:** This is an appeal from the denial of Appellant's Motion to Withdraw Plea that was raised by written motion before trial. [Br. 2].

**STATE'S REPLY: Appellant's written motion was filed after case had been taken under advisement, not pretrial**. The Trial Court affirmatively did not give Appellant permission to appeal. Appellant waived his right to appeal in the Trial Court's certification of his right to

appeal. Appellant waived all rights given to him by law, whether of form, substance or procedure in the document titled Stipulations, Waivers & Admissions; therefore, Appellant's argument that the plea was incomplete because the court did not accept or reject the plea on the record is mute.

**UNTIMELY MOTION TO WITHDRAW PLEA OF GUILTY:**

"[The] Rules of Appellate Procedure do not establish jurisdiction, but rather set out procedures which must be followed to invoke a Court's jurisdiction over a particular appeal. Chavez v. State, 183 S.W.3d 675, 679 (Tex. Crim. App. 2006). Thus Rule 25.2 generally describes the various procedures that must be followed in order to invoke an appellate court's jurisdiction over a particular appeal. . . [T]he requirements of Rule 25.2 do not impermissibly abridge the right to appeal. . . .. *Id*. at 679-80.

Rule 25.2(a)(2) in part, states that, ". . . In a plea bargain case—that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommendation by the prosecutor and agreed to by the defendant—a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled upon before trial, or (B) after getting the trial court's permission to appeal." TEX. R. APP. P. 25.2(a)(2).

Similarly, article 26.13(a)(3) provides, ". . . that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and the defendant's attorney, the trial court must give its permission to the defendant before the defendant may prosecute an appeal on any matter in the case except for those raised by written motions filed prior to trial." TEX. CODE CRIM. PRO. ART. 26.13. Appellant is not arguing the Court assessed a punishment more than agreed to with the State. [Br. at 6]. Appellant is not entitled to an appeal under article 26.13 or rule 25.2 because his punishment does not exceed the

agreed punishment and Appellant's motion was filed after Appellant plead guilty and the Court had taken the case under advisement. *Id.* at 26.13(a)(2).

In this case the trial court did not give Appellant permission to appeal or agree that Appellant filed a timely written motion prior to trial, in fact, Appellant asked the trial court if it would amend the trial court certification of his right to appeal based upon the written motion and allow him to withdraw his plea of guilty. [RR7 12]. The Trial Court's complete answer was, "**No. No, I'm not going to do that.** You – you've got your – your contention and you can appeal it up and the Court of Appeals and maybe beyond can make a determination whether he has a right to withdraw his – his plea." [RR7 12]. Appellant, in his Statement of the Case, admits the Court denied his request but then takes the trial courts statement, out of context by excluding the first sentence, "**No. No, I'm not going to do that.**" and quoting only, "You – you've got your – your contention and you can appeal it up and the Court of Appeals and maybe beyond can make a determination whether he has a right to withdraw his – his plea." [Br. at 6; *Id.*]. From the incomplete statement Appellant argued that, ". .. the, trial court recognized Appellant's right to appeal matters raised by written motion and ruled on before trial."

But, the record prior to this exchange shows Appellate Counsel had been arguing with the Court. The Court, after reviewing the transcript from February 7, 2014, was explaining how the transcript showed the plea bargain was accepted. [RR7 5-10]. Appellate Counsel was arguing it was not and informed the Court, "Judge, basically I want to get on the record is essentially an argument. I want to fully explicate it for the record." [RR7-10] Then Appellate Counsel again stated his position on the record to which the Court started to reply, but Appellate Counsel began talking over the Court and then the Court said, "If, you've got your case law, then you can appeal." Appellate Counsel continues making a record of his arguments and then asks the Court

to amend the trial court certification allowing his client to Appeal which elicited the response above that begins with, "No, no, I'm not going to do that." *Id.*

A court of appeals does have jurisdiction to ascertain whether an appellant who plea-bargained is permitted to by Rule 25.2, but must dismiss a prohibited appeal without further action, regardless of the basis for appeal. Chavez v. State, 183 S.W.3d 675, 679-80 (Tex. Crim. App. 2006). The Court was acknowledging Appellant's right to have the Court of Appeals ascertain whether or not Appellant had a right to appeal, but the Court did not give Appellant permission to appeal.

Additionally, Appellant's written motion was not filed **before** trial barring Appellant from appealing under art. 26.13 of the Code of Criminal Procedure and 25.2 of the Rules of Appellate Procedure. TEX. CODE CRIM. PRO. ART. 26.13(a)(3); TEX. R APP. PRO. 25.2 RULE (a)(2)(A). The trial began and evidence on guilt was closed on February 7, 2014. (*See,* The Close of Evidence of Guilt & Case Taken Under Advisement are Consistent w/ art. 26.13, below.) Appellant's written motion to withdraw his plea was not filed until September 5, 2014. [CR 39; RR2 1-10; (*See*, Point of Error Number 2 below for further support of untimeliness.)].

Furthermore, Appellant waived his right to appeal on February 7, 2014 when he joined Trial Counsel and the Court in signing the Trial Court's Certification of Defendant's Right to Appeal, acknowledging that this was, "a plea-bargain case; and the defendant has NO right of appeal or the defendant has waived his right of appeal." [CR 69]. A defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right to trial by jury in the penalty phase of a capital murder trial where the State is seeking the death penalty. Tex. Code of Crim. Pro. Art. 1.14; Matchett v. State, 941 S.W.2d 922, 930-31 (Tex. Crim. App. 1996). When Appellant knows what his punishment will be if the trial court accepts his plea

there is no valid or compelling reason why appellant should not be held to his bargain. <u>Blanco v. State,</u> 18 S.W.3d 218, 219-20, Tex. Cr. App. 2000).

Additionally, on February 7, 2014, Appellant, together with the State, Trial Counsel, and the Presiding Judge, signed, Stipulations, Waivers, & Admission, which was admitted without objection, waiving his right to trial by jury and ". . . all rights given to [him] by law, whether of form, substance or procedure" as well as other specified rights. [RR-2 6; RR-8 6]. This waiver gave up his right to the claim which is the foundation of his appeal i.e. the trial courts failure to state the words, "I accept this plea bargain" into the record on February 7, 2014 was waived. [RR8 State's 6, Ex. No. 1]

Appellant has no right to appeal because: (1) The trial court did not give Appellant permission to withdraw his plea of guilty; (2) Appellant's motion to withdraw was untimely because it was not filed pretrial; (3) Appellant waived his right to appeal in the trial court's certification of his right to appeal; (4) Appellant waived his argument that the plea simply wasn't complete, when he waived the rights given him law, whether of form, substance or procedure.

**POINT OF ERROR NO. 2**

**APPELLANT'S ASSERTIONS:** The Court did not indicate whether or not it would accept the plea on the record; therefore, its terms had not become binding and Appellant had an absolute right to withdraw his plea of guilty under article 26.13(a)(2). CODE OF CRIMINAL PROCEDURE.

**STATE'S REPLY:** All evidence of **guilt was closed** February 7, 2014, and the case was reset for the sole purpose of sentencing. A review of the entire record reveals **substantial compliance** as it applies to the court's **acceptance of the plea bargain** was met. This case had been **taken**

**under advisement** before appellant filed his written motion to withdraw his guilty plea, therefore, Appellant did not have an absolute right to withdraw his plea of guilty.

## (i) EVIDENCE OF GUILT WAS CLOSED BEFORE THE MOTION TO WITHDRAW WAS FILED:

In a bench trial, the trial judge "takes the place of the jury" so that the defendant retains the unqualified right to withdraw his plea at any time before the trial judge takes the case under advisement. Murray v. State, 302 S.W.3d, 883 (Tex. Crim. App. 2009)(citing Ralls v. State, 205 S.W.2d 594, 596 (1947)). A case is deemed to have been taken under advisement after each side has concluded its presentation of evidence on the subject of guilt and the only issue remaining to be decided is punishment. Wissinger v. State, 702 S.W.2d 261, 262 (Tex. App. —Houston [1st. Dist.] 1985, pet. ref'd).

Where Appellant cites to Bland for the proposition, "where there is no trial, a plea agreement does not become binding," it is important to note Appellant cuts of the second half of the sentence which states, "and the defendant has an absolute right to withdraw from a plea agreement **if he does so before the trial court takes the case under advisement**." Bland v. State, 417 S.W.3d 465, 471-72 (Tex.Crim.App. 2015); State v. Moore, 240 S.W.3d 248 (Tex. Crim. App. 2007); Murray v. State, 302 S.W. 3d 874, 883 (Tex. Crim. App. 2009). Bland was an appeal of a plea agreement based on a pretrial motion to suppress not an appeal from a guilty plea where Appellant filed his written motion after the close of the evidence of guilt, as in this case. Bland at 471-72; [CR2 3-9; RR4 4 & 7]. The absolute right to withdraw a plea of guilty before the trial began as in Bland does not apply to the facts of this case. Appellant in this case did not file his motion pretrial as required by both 26.13 and 25.2 nor was it ruled upon **before** trial as required by 25.2. *Id*.

We submit that this case is more like <u>Wissinger.</u>  <u>Wissinger v. State</u>, 702 S.W.2d 261, 262 (Tex. App. —Houston [1st. Dist.] 1985, pet. ref'd). In <u>Wissinger</u> the defendant waived a jury trial, pleaded no contest, signed a stipulation of evidence, and made a judicial confession admitting the acts alleged in the indictment. *Id.* In this case, on February 7, 2014, Appellant waived a jury trial, pleaded guilty, signed a stipulation of evidence, and made a judicial confession admitting the acts alleged in the indictment. [RR2 4-6; RR8 6-7; CR 69].

In <u>Wissinger </u>the trial court accepted the no contest plea on the record, but made no finding of guilt at that time. *Id.*  In this case all parties understood the Court accepted the guilty plea, but the Court made no finding of guilt at that time.  [RR2 3-5; *see,* (Substantial Compliance/Acceptance of the Plea Bargain, below)]. In <u>Wissinger</u> like in this case the record reflects the Court's intention was to temporarily withhold a finding of guilty so that a deferred adjudication would be available. [RR7 4]; *Id*.

In <u>Wissinger</u> the case was reset for a presentence investigation report and punishment. *Id.* This case was reset to allow Appellant the time to travel to Louisiana for the birth of his child before being placed on deferred adjudication. [RR4 3-4; RR7 5]. In <u>Wissinger</u> like in this case after the close of the guilt/innocence trial the case was reset by agreement of all parties, for sentencing. [RR2 8].  In fact even Appellate Counsel acknowledged that the case was reset for the purpose of agreed punishment. [RR7 4-5].

When the defendant in <u>Wissinger</u> returned for her punishment hearing, she argued that she was entitled to withdraw her plea because there had been no finding of guilt and the case had not yet been taken under advisement. *Id.* The Court of Appeals found, "The sole issue was whether or not the court had taken the case under advisement." *Id.*  In this case when Appellant returned for his punishment hearing, he returned with Appellate Counsel who substituted on the

case and months later filed his motion to withdraw his plea of guilty, arguing he had an absolute right to withdraw his plea of guilty until judgment was pronounced or the case had been taken under advisement. [CR 39-43].

The Appellate Court in Wissinger concluded that the trial court took the case under advisement when the first hearing ended, explaining that the record indicated that each side had concluded its presentation of evidence on the subject of guilt and the only issue remaining was the appropriate punishment. *Id.* In Wissinger the Court of Appeals found that although defendant never stated that she "rested" or "closed" her presentation of evidence on the issue of guilt, the record indicates that she did. Wissinger v. State, 702 S.W.2d 261, 262 (Tex. App. ─Houston [1st. Dist.] 1985, pet. ref'd). In this case the close of the evidence is clear from the record when the Court asked the State, "Anything else on behalf of the State?" To which the State replied, "No, Your Honor." [RR-2-6]. Indicating the end of the State's case. Next the Court asked Appellant's trial counsel, "Anything else on behalf of [Appellant]?" Appellant's Trial Counsel then explained some of the terms of the plea bargain. When he finished the Court rephrased the question as, "Anything else to present?" Trial Counsel responded, "No, Your Honor." [RR-2 6-7]. Marking the end of all evidence. In this case like in Wissinger each side had concluded its presentation of the evidence of guilt and the case was the reset for the appropriate punishment. [RR2 8].

## (ii) SUBSTANTIAL COMPLIANCE FOR ACCEPTANCE OF THE PLEA BARGAIN WAS SATISFIED:

As for the Court's acceptance of the plea bargain, per article 26.13(c) of the Code of Criminal Procedure, ". . . **substantial compliance** by the court is sufficient, unless the defendant

affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." CODE OF CRIMINAL PROCEDURE ART. 26.13(c). Appellant did not argue that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court; therefore, he has not met his affirmative burden and the State need only show substantial compliance. *Id.*

Appellant's sole argument is, "The trial court erred in refusing to honor Appellant's absolute right to withdraw his guilty plea." Appellant argues the Court did not admonish him as to whether or not the Court would accept the plea on the record; therefore, Appellant maintained an absolute right to withdraw his plea of guilty.  [Br. 3, 6 & 12-13].

Substantial compliance as it applies to the Court's acceptance of the plea is found in a thorough examination of the case. The Court acknowledge its acceptance of the plea bargain April 7, 2014, by signing and filing with District Court the Certification of Defendant's Right of Appeal which admonished Appellant in writing, "I, judge of the trial court, certify this criminal case: is a plea-bargain case and defendant has NO right of appeal or the defendant has no right of appeal." Appellant knew of this acceptance as shown by his and his Trial Counsel's signatures on the document with the Trial Judge's signature. Additionally, the written term of the plea bargain were signed by Appellant and Trial Counsel, as well as an attorney for the State and filed with the District Court on April 7, 2014.

Notes from Trial Counsel, made part of the record by Appellant, show Appellant's knowledge that the Trial Court did accept the plea bargain. Trial Counsel's notes include a two page handwritten copy of terms of the plea bargain which states in part, Appellant stay in Texas and attend sex offender treatment. [CR 138-39]. Trial Counsel's typed notes from November 7, 2013 also indicate, "staying in Texas during community supervision" was a condition. [CR 150].

- 23 -

Trial Counsel's typed notes from January 3, 2014 indicate Appellant wanted to accept the offer despite having concerns about being a registered sex offender, and again that he would have to serve his community supervision in Texas. [CR 151]. This entry explains that Appellant's wife was 7 months pregnant and from Louisiana and that a plea bargain before the birth of their child would cause problems. [CR 151]. It also explains the reason Appellant must remain in Texas was because it was believed that Louisiana would not accept his probation transfer. [CR 151].

On February 7, 2014 a pretrial conference was held in chambers with Trial Counsel, the State and the Presiding Judge. [CR 152]. In that conference the terms of the plea bargain were discussed including the concern that Louisiana may refuse such transfer and that Appellant would have to prepare himself for the possibility of serving out his community service in Texas. [CR 152]. Trial Counsel detailed in his notes:

> Judge Cain has no fundamental objection to [Appellant] transferring his community supervision to Louisiana, assuming Louisiana will accept him, but did not agree that [Appellant] be transferred. My impression is that judge Cain will consider the opinion of the Chambers County Probation Department before making a decision. [State] does not object to transfer. Nevertheless, I told [Appellant] he should assume he is to remain in Texas during his community supervision, until he is told otherwise.

[CR 152].

A decision was made to accept the plea but delay the beginning of Appellant's community service so that he could attend the birth of his child in Louisiana. [CR 151; RR2 8; RR4 3; RR7 5]. Statements by counsel about the current proceedings that are not contradicted by the opposing side are evidence of what occurred, at least when the opposing side is in a

position to and has an incentive to contradict the statement if it is not true. Thieleman v. State, 187 S.W. 3d 455, 457-58 (Tex.Crim.App. 2005). Appellant did not contradict that the birth of Appellant's child was the reason the sentencing was reset but agreed, "it was off set for a couple of months to give him time to do whatever it was." [RR4 3-4; RR7 5]. Allowing Appellant to delay sentencing for the birth of his child was part of the plea bargain.

The language with the Trial Judge about the delay in sentencing supports the fact that the Court had accepted the plea bargain including the additional unwritten term of allowing Appellant time to go to Louisiana for the birth of his child before his deferred adjudication began. After the pretrial conference and at the beginning of the trial, both on February 7, 2014, the State reminded the Court, "We're not doing punishment today." And, the court confirmed, "I understand." And again, at the end of the plea the Court clarified, "Have y'all agreed to reset this for sentencing to a later date?" [RR-2 3; RR2 8]. Both parties then agreed to reset the case for June, three months after the baby was due. [RR2 8; RR2 8: CR 151].

Appellant's wife understood the Court accepted the plea. Trial Attorney's February 7, 2014 notes state that, "[Appellant] is to attend classes before he is to be around children. In addition there is something like, I forget the word, although [State] told me, and all I can think of is babysitting or chaperon." [CR 152]. Trial attorney's notes indicate that Appellant's wife was in court with Appellant on February 7, 2014, the day he plead guilty. [CR 152]. Four days later Appellant's wife called Trial Attorney and obtained the name and phone number of the sex offender counselor who would be teaching the chaperon class. [Cr 153]. Trial Attorney estimated the cost of the classes to be between $300.00 and $350.00 dollars. [CR 105, 153, 204 & 261]. In a written statement, Appellant's wife swears, "After the plea, I had to take a class to become a certified chaperone. That was one of the requirements of the deal." [CR 267]. June 5, 2014, trial

attorney spoke with Appellant's wife and learned that she and baby were now in Texas. [CR 154]. Appellant's wife completed the chaperon class June 8, 2014, nineteen days before Appellant's sentence was due to be imposed, but instead he appeared with New Counsel. [CR 204; RR3 3]. The actions of Appellant's wife and the fact that Appellant and his wife spent $300.00 to $350.00 dollars for her to complete the chaperon class after the guilty plea strongly indicates that Appellant and his wife both understood the Court had accepted the plea bargain.

Add this to the language that was used during the plea indicating that all parties understood the plea had been accepted. The Court, while admonishing Appellant, asked, "You understand that you will be required to register as a sex offender the rest of your life?" Appellant answered, "Yes, sir." Note, the Court did not say ""If I accept this plea bargain." [RR2 5]. While reciting the plea agreement into the record the State spoke as if all parties understood the plea was accepted when saying, ". . . there will be a onetime payment made to Bridgehaven, and we'll set that on the date when he comes back for sentencing."

Furthermore, the Court's comments when returning from the plea and the Trial Court's review of the transcript of the plea indicate the Court's acceptance of the plea bargain. When returning for sentencing, on June 27, 2014, the follow exchange occurred:

[Trial Counsel]: Your Honor, there's a Motion to Substitute Counsel. He's here.

The Court: Are you ready for sentencing today?

[Appellate Counsel]: We need to approach on it, You Honor.

The Court: Well, when are we going to do that?

[Trial Counsel]: I'm ready to - - I mean, they filed a Motion to Substitute and so I have no opposition to the Motion to Substitute.

The Court: **Seems a little late in the game . . .**

. . .

The Court: Eric, [State], who is doing the sentencing on [Appellant]?

Mr. Carcerano, [Eric, State]: Kathy, [State]

[RR3 3].

A discussion regarding the Motion to Substitute occurs, then:

The Court; "Has he already entered a plea?"

[Trial Counsel] "He has, Your Honor."

The Court: Okay. So you're wanting to withdraw that plea is what you're really wanting to do.

[Appellate Counsel] We contacted the Court Friday while [Appellant] was still in the office and - -

The Court: Was this an agreed sentencing or was – it up to the Court?

[State]: Yes. Yes, it was an agreed sentencing.

[RR3 5]. All statements by the Court indicate the Court's acceptance of the guilty plea.

On December 18, 2014, after reading the transcript of the plea, the Court again found "This is – it appears to me that this was a plea agreement, and I don't think he's got a – an absolute right to – withdraw his plea." [RR6 11]. In responding to Appellate Counsel's argument that the Court failed to announce its acceptance of the plea bargain, the Court replied, "I did by implication. I mean, it's my general -- my general -- I asked -- I specifically asked: Do y'all want to set this for a different date for sentencing? And I'm not trying to split hairs with you. On -- on sexual offenses, there are times that I refuse to accept the pleas, and I tell them right up front when I'm not going to accept the plea." [RR6 12-13].

Add to that the fact that, on February 27, 2015, after the Court reviewed the transcript of the plea for a second time the Court explained;

On the February 7, 2014 plea agreement hearing date, just like today, I just got through with a couple of cause numbers that I refused to follow the plea agreement in and aggravated sexual assault of a child - - actually, it was a continuous, one of them was. That was the Ferguson case, 17753 and 17754. As soon as I heard what the agreement was and looked it over, I refused to follow it. Now, when I look at this situation, we went through the sentencing, the defendant plead guilty. I asked what the plea agreement was.

[RR7 7].

The Court then recalled how on the day of the plea it recapped the plea agreement as expressed by the State during the plea, verified with Trial Counsel that this was the deal, and asked Trial Counsel and the State if they had agreed upon a reset date and said, "We'll find a June reset date. I'm going to withhold any findings until such time that we come back for sentencing. Thank you." [RR7 7-8]. Then, on February 27, 2015, the Court found:

And if I wasn't going to follow the plea agreement, I would have said it right then. I wouldn't have wasted our time, So I agreed to it basically. But even if that's not clear from the record, I think the Court has the discretion to follow it or not and --- or to give you a new trial or not, allow him to withdraw his plea or not.

[RR7 8-9]. Trial Court's assessment that it retained discretion to withdraw the plea or not, is consistent with this case having been taken under advisement and the case law on such.

Unlike Appellate Counsel, who substituted on the case after the guilty plea, both Trial Counsel and the State were familiar with the practices of the Trial Court as seen in the comments

by the Trial Court. The Court in addressing Trial Counsel, Jim Keegan, said, "I'm sure you've done a good job, you always do; but if he [Appellant] wants it explored by other counsel, that's fine." [RR3 6]. At a later setting, after Ms. Esquivel, [State], dictated some of her discussions with trial counsel, over this case, the Court responded, "I believe that based on his [Trial Counsel's] past performance." [RR6 7]. Indicating the fact that Trial Counsel had a history of practicing before the Court. As for the State's attorney, the Court made the comment to Appellate Counsel, "I didn't say that. I didn't say what I was going to do. You don't know what I was going to do. Ms. Esquivel, [the State's attorney] may or may not know, I don't know. She's been around me a lot longer than you have." [RR6 15-16].

A thorough review of the record supports the Trial Court met the burden of substantial compliance as it applies to informing Appellant that it accepted the plea bargain and all parties understood.

### (ii) THE CLOSE OF EVIDENCE OF GUILT AND TAKEN UNDER ADVISEMENT ARE CONSISTANT WITH ARTICLE 26.13:

Taking a case under advisement means evidence of guilt has concluded leaving only punishment. Wissinger v. State, 702 S.W.2d 261, 262 (Tex. App. ─Houston [1st. Dist.] 1985, pet. ref'd). The way Appellant phrased his issue, "Whether the trial court erred in refusing to honor Appellant's absolute right to withdraw his guilty plea." wrongly assumes Appellant had an absolute right to withdraw his guilty plea at the time he filed his written motion to withdraw his plea of guilty. Appellant's issue would be more accurately phrased as, "Did the trial court take Appellant's case under advisement before Appellant filed his motion to withdraw his plea of guilty?"

We agree, "A liberal practice prevails in this state concerning the withdrawal of a guilty plea." Garcia v. State, Tex. Cr. R. 9, 237 S.W. 279 (1921). Stanton v. State, 262 S.W.2d 497 (1953). In a trial before the court, a defendant may withdraw his guilty plea as a matter of right without assigning reason until such judgment has been pronounced or the case has been taken under advisement. Jackson v. State, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979); Milligan v. State, 324 S.W.2d 864 (1959); Rumage v. State, 324 S.W.2d 865 (Tex. Cr. App. 1959); Ralls v. State, 205 S.W.2d 594 (1947).

[Br. at 8].

Appellant uses Murray to argue the requirement that the trial judge approve a plea agreement; however, Murray was not analyzing that issue. In Murray the trial court indicated that it intended to follow the plea agreement and took the case under advisement. Murray at 876. Appellant points out that in Murray, "[w]hen the trial judge took this case under advisement, he still retained the ability to reject the plea agreement," but fails to mention that in Murray, "the plea agreement was not viable because it was not allowed under the law, that is the court did not have jurisdiction of the subject matter. Murray at 883. Jurisdiction is a predicate that must be established before there be a bench or a jury trial. Murray at 878-79.

Actually, Murray enlightens,

"In Ralls, we explained that the rule in jury trial was that a guilty "plea may be withdrawn and plea of not guilty entered at any time before the jury retires to consider [ ] its verdict." We concluded that in bench trials, the trial judge "takes the place of the jury" so that the defendant retains the unqualified right to withdraw his plea at any time before the trial judge takes the case under

- 30 -

advisement. As we explained in a later discussion recited in DeVary: "[A] defendant may withdraw his guilty plea as a matter of right without assigning reason until such judgment has been pronounced or the case has been taken under advisement."

Murray v. State, 302 S.W.3d 874, 883 (Tex.Crim.App. 2009).

Appellant also cites to Thompson to support his argument that a plea agreement does not become binding until the trial court approves it, but neglects to mention the controlling fact in Thompson was, "Appellant's guilt had been established at the initial hearing. Each side had obviously concluded its presentation of evidence on the subject of guilt." [Br. at 12]; Thompson v. State, 852 S.W.2d 268, 270 (Tex. App. 1993 ─Dallas, no pet.). "The plea had been accepted and all of the required admonishments had been given. The only issue remaining to be decided was the appropriate punishment." The court described, "Thus, the issue [was] whether the trial court took the case under advisement at the conclusion of the initial hearing." Thompson at 270. The Appellant in Thompson, like in this case, moved to withdraw his plea of guilty after the guilt portion of the trial was complete. *Id*. at 269. The trial court in Thompson, like in this case, did not make a finding of guilt at the initial hearing; however, the fact that the evidence of guilt was complete and the case had been taken under advisement, before appellant moved to withdraw his plea of guilty meant his absolute right to withdraw was untimely, as is this case. *Id.* at 270.

Like in this case, in Scott the trial court, in essence, "took the case under advisement" when it recessed following closing arguments. Scott v. State, 860 S.W.2d 645, 647 (Tex. App. ─Dallas 1993, no pet.), *see also,* Wissinger v. State, 702 S.W.2d 261, 262 (Tex. App. ─Houston [1st. Dist.] 1985, pet. ref'd). This point in the proceedings is analogous to when a jury would retire. Scott at 647; Ralls v. State, 151 Tex. Crim. 146, 205 S.W.594, 596 (1947). Although

acceptance of the plea bargain wasn't the issue, the issue was, since the court did not make a finding of guilt at the time of the guilty plea had the case been taken under advisement? The same logic applies here, the evidence of guilt was closed and the case was reset for the sole purpose of punishment.

> Under the standard set forth in Jackson, if the trial court had already taken the case under advisement before the request to withdraw was made, then appellant is not entitled to withdraw his plea as a matter of right. Jackson v. State, 590 S.W. 2d. 514, 515 (Tex. Crim. App. [Panel Op.] 1979). A case is deemed to be taken under advisement after each side has concluded its presentation of evidence on the subject of guilt, the defendant's guilt has been established, and the only issue remaining to be decided is the appropriate punishment. Thompson v. State, 852 S.W.2d 268, 270 (Tex. App. ─Dallas 1993, no pet.). There is no requirement that there be a finding of guilt before a case is considered to have been taken under advisement. *See* Wissinger v. State, 702 S.W.2d 261, 262 (Tex. App. ─Houston [1st. Dist.] 1985, pet. ref'd). On the other hand, a case is not regarded as "under advisement" and a defendant is entitled to withdraw a guilty plea, if the requests to withdraw is made before the evidence is closed and the case is sent to the finder of fact. *See* Wilson v. State, 515 S.W.2d 274, 275 (Tex. Crim. App. 1974). We note that the court of criminal appeals has held that the trial court taking "a case under advisement" is very similar to the retirement of a jury to consider its verdict. Ralls v. State, 151 Tex. Crim. 146, 205 S.W. 594, 596 (1947).

Scott v. State, 860 S.W.2d 645, 646-47 (Tex. App. ─ Dallas 1993, no pet.). In this case there was no more evidence to be presented on the issue of guilt.

The fact that the appellant's request, in <u>Scott,</u> to withdraw his plea of guilty was made before the trial court stated its finding of guilt and imposed punishment was found to be inconsequential because it was made after the conclusion of evidence of guilt. *Id*. at 647. Likewise it is inconsequential that Appellant in this case moved to withdraw his guilty plea after the conclusion of evidence of guilt but before he was sentenced because the case had been taken under advisement.

<u>Zapata</u> found, "Article 26.13 only expressly permits the defendant to withdraw his plea of guilty or nolo contendere if the court rejects the agreement. <u>Zapata v. State</u>, 121 SW3d 66, 67 (Tex. App. — San Antonio 2003, pet. ref'd). Article 26.13 does not expressly permit the defendant to withdraw his plea after a plea is entered but pending the trial court's decision regarding whether to accept the agreement. *Id.* Appellant relies on <u>Crumpton</u> for the proposition that the acceptance of the plea means acceptance of the plea bargain. [Br. at 7]; <u>Crumpton v. State</u>, 179 S.W.3d 722.fn5, (Tex. App. —Fort Worth 2005, pet. ref'd). The Court of Appeals in Crumpton however was not asked to decide the proposition above, but was merely citing to one of its own former rulings in a footnote. Id. <u>Zapata,</u> on the other hand, relied upon decision of higher courts to perform the following analysis:

> [I]n *Santobello,* the United States Supreme Court held that a plea agreement is enforceable against the State after the defendant enters his plea based on that agreement. If the State violates the agreement during the sentencing proceeding, the defendant is at least entitled to specific performance of the agreement as against the State. This does not preclude the trial court from rejecting the plea agreement; it simply precludes the State from violating the plea agreement. In

*Blanco v. State,* 18 S.W.3d 218, 219 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals noted the rule in *Santobello* that permits a defendant to insist on the benefit of the bargain. The court then reasoned, "Where, as in this case, there has been no unfairness 'in securing agreement between an accused and a prosecutor,' there is no reason why this rule should not apply to defendants." *Id.* (quoting *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)).

The language used by the courts regarding when a plea agreement becomes binding can be read consistently with *Santobello* if a plea bargain agreement is envisioned as a two step process. The first step in the process is the agreement between the prosecutor and the defendant with regard to the guilty plea and the avoidance of trial. Once made, that agreement becomes binding when the defendant enters his plea. At that point, both the State and the defendant are bound by the terms of the plea bargain agreement and are not permitted to take actions inconsistent with the agreement. Therefore, the State must abide by its agreement regarding the recommendations it will make, and the defendant must abide by his agreement to plead guilty. *See Blanco,* 18 S.W.3d at 219 (rule applies both ways).

The second step in the process involves the trial court's acceptance or rejection of the recommended punishment. Once the plea agreement is made, the recommended punishment becomes binding only if the court accepts the recommendation. If the court rejects the recommendation, the agreed punishment

is not binding, and the defendant may withdraw his plea. TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2003).

Using purely contractual terms, the trial court's rejection of the plea agreement could be likened to a condition subsequent to the plea agreement between the State and the defendant. A condition subsequent is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition. *Rincones v. Windberg,* 705 S.W.2d 846, 848 (Tex.App.-Austin 1986, no pet.). The trial court's rejection of the plea agreement would be a condition subsequent or an event that would make the plea agreement no longer binding upon the defendant.

From a policy perspective, permitting the trial court to obtain a pre-sentence investigation report prior to deciding whether to follow the punishment recommendation without the risk of the defendant or the prosecutor jeopardizing the plea agreement would appear preferable. As one commentator has noted:

As a matter of policy, it probably is preferable for the judge always to reserve accepting a plea agreement until after the presentence report has been examined. The judge's duty to scrutinize the agreement from the public's and the defendant's viewpoints can best be executed after the judge has obtained the additional information about the offense and defendant contained in the presentence report. If the *Ortiz* plurality is followed in subsequent cases, it would permit acceptance of the agreement to be postponed until after the presentence report has been received. So long as the trial court scrupulously permits the defendant to

withdraw the plea if the court later rejects or substantially modifies the agreement, the defendant's interests are protected. 43 GEORGE E. DIX AND ROBERT O. DAWSON, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 34.105 (2nd ed.2001).

Based on the United States Supreme Court's holding in *Santobello,* we hold that rule 25.2(b)(3) applies when a defendant enters a plea of guilty or nolo contendere based on a plea bargain agreement and the punishment imposed by the court does not exceed the punishment recommended in accordance with the plea bargain agreement. A motion to withdraw filed after the plea has been entered does not affect the defendant's agreement regarding the recommended punishment or the applicability of the rule.

Zapata v. State, 121 S.W.3d 66, 69-70 (Tex. App. ─ San Antonio 2003, pet. ref'd.). It is the State's position in this case that Zapata is consistent with taking a case under advisement. It is also the State's position that the Court's written admonishment to Appellant:

## PLEA BARGAIN

If no plea bargain exists, the Court is not bound to or limited by any punishment recommendation made by the State. If a plea bargain does exist, the Court must inform you in open court whether or not it will follow the agreement before any finding is made on your plea. Should the Court reject your agreement, you are entitled to withdraw your plea.

[CR 28]. And, the Court's oral acceptance of the plea bargain the day of sentencing satisfied the requirement 26.13(a)(2). [RR7 17].

**Conclusion:**

Appellant does not have a right to appeal. The record shows the Court did notify Appellant the plea bargain had been accepted by satisfying substantial compliance on the day he plead guilty and by oral announcement the day he was sentenced.

## PRAYER FOR RELIEF

The State respectfully submits that Appellant's deferred adjudication is regular in all respects and prays that this Court Affirm the trial court's judgment. See. TEX. R. APP. P. 43.2.

**Cheryl  Swope Lieck**
District Attorney
Chambers County, Texas


**/s/ Kathy Esquivel**
State Bar No. 24034432
Assistant District Attorney
P.O. Box 1409
Anahuac, Texas 77514
PH: 409-267-2682
FAX : 409-267-3105

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been e-mailed to the

following:

**RICHARD K. OLIVER**
Attorney for Appellant
SBN: 24048179
1221 Studewood Street
Houston, Texas 77008
(713) 864-3700
rickoliverlaw@gmail.com

## CERTIFICATE OF COMPLIANCE

The State respectfully submits a response to Appellant's brief 01-15-00206-CR and counsel on appeal hereby certifies that the word as calculated by her computer is 8636, including only the Statement of Facts, Summary of the Argument, and the Argument.

See. TEX. R. APP. P. 9.4.

**Cheryl  Swope Lieck**
District Attorney
Chambers County, Texas


**/s/ Kathy Esquivel**
State Bar No. 24034432
Assistant District Attorney
P.O. Box 1409
Anahuac, Texas 77514
PH: 409-267-2682
FAX : 409-267-3105